IN THE UNITED STATES COURT FOR THE DISTRICT OF UTAH

CENTRAL DIVISION

| | |
|---|---|
| ROSALIND ENOCH,<br>Plaintiff,<br><br>vs.<br><br>DAHLE/MEYER IMPORTS, L.L.C., dba D. DAHLE MAZDA, et al.,<br>Defendants. | **ORDER AND MEMORANDUM DECISION**<br><br>Case No. 2:05-CV-409 TC |

On October 5, 2007, the court heard oral argument on the five pending motions for summary judgment in this case.

All motions address allegations that institutions associated with Plaintiff Rosalind Enoch's attempted purchase of a used vehicle from Defendant Dahle/Meyer Imports, L.L.C., dba D. Dahle Mazda ("Dahle"), violated the Fair Credit Reporting Act, 15 U.S.C. § 1681, et seq ("FCRA"), and the Equal Credit Opportunity Act, 15 U.S.C. § 1691 ("ECOA").

For the reasons stated more fully below, the court GRANTS the motion for summary judgment filed by Defendant TranSouth Financial Corporation, now known as CitiFinancial Auto Corporation ("CitiFinancial"), GRANTS the motion for summary judgment filed by Defendant

Household Automotive Finance Corporation ("Household"), and GRANTS the motion for summary judgment filed by Defendant First American CREDCO ("CREDCO"). The court DENIES both motions for summary judgment filed by Plaintiff Rosalind Enoch.

**Background**

In May of 2004, Ms. Enoch attempted to purchase a used vehicle from Dahle.

On May 6, 2004, Ms. Enoch received a phone call from Dahle. During this phone call, Ms. Enoch claims that Dahle informed her that it "had a program that would work with individuals with [her] credit circumstances." (Enoch Decl., Jan. 16, 2005, ¶ 2 ("Enoch Decl.").) During the call, Dahle also "advised [Ms. Enoch] to bring in a recent pay stub and a utility bill for proof of income and address." (Id.) On the same date, Dahle requested Ms. Enoch's credit report pursuant to an agreement with non-party DealerTrack, Inc., which prompted Defendant CREDCO to provide Dahle with her credit report.

Two days later, on May 8, 2004, Ms. Enoch went to Dahle and decided to purchase a 1999 Mercury Cougar. Dahle informed Ms. Enoch "the D. Dahle Mazda program would give [her] an opportunity to re-establish credit and that the program they had would work for [Ms. Enoch]." (Id. ¶ 4.) Ms. Enoch signed a promissory note for the down payment of the vehicle, as well as the Motor Vehicle Contract of Sale ("MVC"), but Dahle told her that she could not drive the vehicle off the premises without proof of insurance. On May 10, she returned with proof of insurance and drove the Mercury off the lot.

Ms. Enoch understood that her vehicle purchase required credit financing, but apparently "was lead to believe that [Dahle] already had financing arranged for [her]." (Id., ¶ 13.) Ms.

Enoch claims that there was no mention that the sale was contingent upon her credit approval even though the MVC—which she signed—laid out very specific financing terms for the purchase of the vehicle under the bolded heading "Seller Agrees to **Seek** Arrangements for Financing." (Motor Vehicle Contract of Sale, attached as Ex. A to Enoch Decl. (emphasis added).) In addition to specific financing terms, the section included the statement, "if seller is not able to arrange financing within the terms disclosed, then seller must, within seven calendar days of the date of sale, mail notice to the purchaser that he/she has not been able to arrange financing." (Id.)

Concerned about noises coming from the Mercury, Ms. Enoch drove the vehicle back to Dahle on May 15. Dahle then told Ms. Enoch that she did not qualify for financing, and consequently, Dahle would have to repossess the car. Ms. Enoch disputed Dahle's right to take the car and drove away. Some time later, she surrendered possession.

On May 18, 2004, Dahle wrote Ms. Enoch a letter explaining "that we have not been able to arrange financing for [Ms. Enoch] at or within the terms stated in . . . the Motor Vehicle Contract of Sale . . . ." (Notice to Customer, attached as Ex. C to Enoch Decl.) The letter offered two choices to Ms. Enoch: either she could "decide to rescind [her] purchase," and Dahle would refund all consideration she had paid, or she would have to "pay to seller the full balance that [she] agreed to pay for the vehicle." (Id.)

Defendants CitiFinancial and Household each declined to extend credit to Ms. Enoch for the purchase of the vehicle. CitiFinancial mailed Ms. Enoch a letter dated May 18, 2004, giving the reasons for the denial. (See Letter TranSouth Financial to Rosalind M. Enoch, May 18, 2004,

attached as Ex. B to CitiFinancial's Mem. Supp. Summ. J.) Household explained its denial in a letter dated June 4, 2004. (See Letter Household Auto Finance to Rosalind M. Enoch, June 4, 2004, attached as Ex. A to Karen Watkins Aff., Nov. 8, 2005.)

The court previously denied motions for summary judgment filed by Household and CitiFinancial—which were similar to the present motions—in order to afford Ms. Enoch "some opportunity to engage in discovery before suffering a summary dismissal of her claims." (Order & Mem. Dec., at 2 (Mar. 6, 2006).) More than twenty months have passed since that order, and Ms. Enoch has filed two summary judgment motions of her own, indicating the record is sufficient for the court to make a decision.

## Analysis

### I. Summary Judgment Standard

Summary judgment is proper "if the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any, show that there is no genuine issue as to any material fact and that the moving party is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(c). "In conducting our analysis, we view all of the facts in the light most favorable to the non-movant and reasonable inferences from the record must be drawn in favor of the non-moving party." Piercy v. Maketa, 480 F.3d 1192, 1197 (10th Cir. 2007). "To survive summary judgment, 'nonmovant's affidavits must be based upon personal knowledge and set forth facts that would be admissible in evidence; conclusory and self-serving affidavits are not sufficient.'" Murray v. City of Sapulpa, 45 F.3d 1417, 1422 (10th Cir. 1995) (quoting Hall v. Bellmon, 935 F.2d 1106, 1111 (10th Cir. 1991)).

## II. Summary Judgment Motions

The Complaint asserts the Second and Third Causes of Action—which allege violations of ECOA and FCRA—"Against All Defendants." (Compl., ¶¶ 51-65.) There are no other claims asserted against Defendants CitiFinancial, Household or CREDCO.[1] By moving to dismiss these claims, all three Defendants seek summary dismissal from the case.

The court will consider: (A) the motions that address allegations against CitiFinancial and Household, Defendants that used Ms. Enoch's credit report to determine whether to extend her credit to purchase the vehicle; and (B) the motions that address allegations against CREDCO, Defendant that provided Ms. Enoch's credit information to Dahle.

### A. CitiFinancial and Household

Ms. Enoch argues that CitiFinancial and Household each violated 15 U.S.C. § 1681b, which permits only a few specific circumstances for a party to acquire a consumer's credit information.[2]

One such permissible circumstance is when the party "intends to use the information in connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to . . . the consumer." 15 U.S.C. §

---

[1]The Fourth Cause of Action, for "fraud regarding the nature of transaction" has been asserted "against Dahle Mazda and Doe Auto Finance." (Compl., ¶¶ 66-86.) When faced with motions for summary dismissal, Ms. Enoch has not provided any evidence—or argument—that this cause of action should continue against CitiFinancial, Household or CREDCO. The court concludes that Ms. Enoch did not intend to include any of these three Defendants in the Fourth Cause of Action.

[2]To the extent that Ms. Enoch continues to assert the Second Cause of Action against CitiFinancial and Household—which is not clear from her briefing—alleging that they violated ECOA "by not providing Ms. Enoch with proper notice of the action taken regarding her credit application," (Compl., ¶ 52) the court dismisses the claim because all undisputed evidence is that both CitiFinancial and Household notified Ms. Enoch of her credit denial in satisfaction of 15 U.S.C. § 1691(d).

1681b(a)(3)(A). The Seventh Circuit analyzed this provision after plaintiffs had asserted that they were not "involved" in a particular credit transaction, in Stergiopoulos and Castro v. First Midwest Bancorp, Inc., 427 F.3d 1043 (7th Cir. 2005). Specifically, the plaintiffs in Stergiopoulos reasoned that the credit transaction involved "two wholly separate transactions: one between each plaintiff and his or her dealer, and another between the dealer and [the third-party lender]." Id. at 1046. According to the plaintiffs, "the second transaction was divorced from the first to such a degree that they were no longer 'involved' in it." Id. Rejecting such a literal understanding of "involved," the circuit held that § 1681b(a)(3)(A) "merely requires that the entity must be engaged in a credit transaction in which the consumer is **participating**." Id. at 1047 (emphasis added). Although the plaintiffs "did not know that [the third-party lender] in particular was going to request their credit reports, they were aware that the transactions contemplated sale of the [retail installment contract] to a third party, and the **statute does not require that consumers expressly approve each request for a report**." Id. at 1046 (emphasis added). Ultimately, because the third-party lender "request[ed] the plaintiffs' credit reports for the sole purpose of determining whether to furnish the plaintiffs with credit, [it] satisfied the FCRA's requirement that it 'intend[ed] to use the information in connection with a credit transaction involving'" the plaintiffs. Id. at 1047 (quoting 15 U.S.C. § 1681b(a)(3)(A)).

Similarly, Ms. Enoch knew she was involved in a credit transaction and she knew entities such as the CitiFinancial and Household would have to review her credit information and determine whether or not to finance her purchase. And, like the plaintiffs in Stergiopoulos, Ms. Enoch signed the MVC, which made clear that Dahle would seek financing on her behalf.

Consequently—even though Ms. Enoch did not request credit directly from CitiFinancial or Household—there is no question that Ms. Enoch **participated** in the request for credit.

Alternatively, Ms. Enoch argues that CitiFinancial and Household violated § 1681b(a)(3)(A) because she "was lead to believe that [Dahle] already had financing arranged for [her]."[3] (Enoch Decl., ¶ 13.) But regardless of whether Dahle did, in fact, allow Ms. Enoch to believe that her credit had already been approved, CitiFinancial and Household complied with § 1681b(a)(3)(A). The uncontroverted evidence is that they intended only to use Ms. Enoch's credit information to determine whether to finance Ms. Enoch's vehicle purchase. CitiFinancial initially requested Ms. Enoch's credit information pursuant to "an agreement with Defendant Dahle Mazda whereby it agrees to consider, upon request, extending credit to Dahle Mazda customers in conjunction with the customer's purchase of a vehicle." (Stephen Wheeler Aff., Feb. 27, 2006, ¶ 5.) And CitiFinancial reviewed Ms. Enoch's credit information for the sole purpose of "determin[ing] whether to extend credit to her to finance the purchase of a vehicle from Dahle Mazda." (Id., ¶ 7.) Similarly, Household gained access to Ms. Enoch's credit report only after receiving an application from Dahle. (Karen Watkins Aff., Nov. 8, 2005, ¶ 1.) "Household believed that the application would be used to extend credit to Ms. Enoch in the ordinary course of business." (Id., ¶ 6.)

There is simply no evidence that either CitiFinancial or Household intended to use Ms. Enoch's credit information for any purpose other than to determine whether to finance her

[3]According to Ms. Enoch, had CitiFinancial and Household simply reviewed her credit data before May 8, there would be no violation. But after this date—because Ms. Enoch understood that her credit had been approved—CitiFinancial and Household violated FCRA by accessing her credit to determine whether to finance her vehicle purchase.

vehicle purchase. And there is no evidence that either used her information for any other purpose.[4]

Finally, CitiFinancial has also asked for fees, asserting that this suit was filed in bad faith or with intention to harass. There is no evidence that Ms. Enoch filed this suit with any intent to harass, so the court DENIES CitiFinancial's request.

B. CREDCO

Ms. Enoch alleges that CREDCO violated FCRA by providing Dahle with her credit report. Specifically, she asserts that CREDCO did not satisfy its obligations under 15 U.S.C. § 1681e which requires that "[e]very consumer reporting agency shall maintain reasonable procedures . . . to limit the furnishing of consumer reports to the purposes listed under section 1681b of this title."[5]

CREDCO is in the business of selling consumer credit data and is a consumer reporting agency under FCRA.[6] To that end, CREDCO entered into a joint marketing agreement with DealerTrack, Inc. ("DealerTrack"), to provide consumer credit reports. Dahle entered into an

---

[4]Ms. Enoch also asks the court to impose a duty of inquiry on CitiFinancial and Household. She argues that they violated § 1681b(a)(3)(F) because she did not **initiate** this transaction; Dahle called her and allegedly informed her that she had already received credit approval to buy a vehicle. And, according to Ms. Enoch, § 1681b(a)(3)(F) requires CitiFinancial and Household to verify that there was "a legitimate business need for the information . . . in connection with a business transaction that is initiated by the consumer." But because the court determined CitiFinancial and Household had a permissible purpose under § 1681b(a)(3)(A), the court does not consider Ms. Enoch's argument.

[5]Similar to the court's dismissing the Second Cause of Action against CitiFinancial and Household—finding Ms. Enoch presented no argument or evidence that this claim should continue—the Second Cause of Action is also dismissed against CREDCO.

[6]15 U.S.C. 1681a(e) defines consumer reporting agency as "any person which, for monetary fees, dues, or on a cooperative nonprofit basis, regularly engages in whole or in part in the practice of assembling or evaluating consumer credit information . . . for the purpose of furnishing consumer reports to third parties . . . ."

agreement with DealerTrack to receive consumer reports, "signal[ing] that it had read and agreed to the terms of the agreement by checking a box on DealerTrack's website." (Patrick Colbert Aff., May 16, 2007, ¶ 7.) Among the terms in the agreement with DealerTrack, Dahle agreed to:

> request information **only for the Dealer's exclusive use**, and the Dealer **certifies that inquiries will be made only for the following purpose** and no other purpose: In connection with a credit transaction involving the consumer on whom the information is to be furnished and involving the extension of credit to, or review or collection of an account of the consumer.

(DealerTrack Access Agreement, ¶ 3(h), attached as Ex. C to Patrick Colbert Aff., May 16, 2007 (emphasis added).)

As Ms. Enoch explains in the Complaint, "[a]s part of its determination whether it would extend credit to Ms. Enoch, Dahle Mazda requested Ms. Enoch's consumer report." (Compl., ¶ 28.) Accordingly, on May 6, 2004, Dahle requested Ms. Enoch's consumer report from DealerTrack, prompting CREDCO to provide her credit report to Dahle. CREDCO played no other role in the determination of Ms. Enoch's credit worthiness.

Ms. Enoch argues that because the DealerTrack Access Agreement provided only a blanket certification, CREDCO did not satisfy its obligation to verify that Dahle requested her credit report for a permissible purpose under § 1681b.

But before ruling that a blanket certification is insufficient, courts consistently require evidence that the consumer credit reporting agency should have known that the report was requested for an impermissible purpose. For example, the Middle District of Louisiana upheld a reporting agency's reliance on a blanket certification because the plaintiffs "failed to introduce any material evidence to show that the Credit Bureau had reason to believe that a user of its

services was obtaining credit reports for an impermissible purpose." Davis v. Asset Servs., 46 F. Supp. 2d 503, 508 (M.D. La. 1998). Similarly, the Southern District of New York concluded that "it would be impractical to require [the credit reporting agency] to verify the purpose for each credit report. By requiring its subscribers to certify the purpose for reports in advance, [the credit reporting agency] reasonably strikes a balance between the conflicting goals of protecting the privacy rights of consumers and promoting an efficient credit economy." Boothe v. TRW Credit Data, 557 F. Supp. 66, 71 (S.D.N.Y. 1982). Absent any "showing that [the credit reporting agency] knew of the improper purpose for the report issued as to plaintiff, the court conclude[d] that [the credit reporting agency]'s release of plaintiff's report was not in violation of the Act." Id. And, most recently, while noting that "Section 1681e requires more from a credit reporting agency than merely obtaining a subscriber's general promise to obey the law," the Ninth Circuit concluded that a reporting agency "may not furnish reports if 'reasonable grounds' exist to believe that reports will be used impermissibly." Pintos v. Pac. Creditors Ass'n, --- F.3d ----, Nos. 04-17485 & 04-17558, 2007 WL 2743502, at *5 (9th Cir. Sept. 21, 2007) (emphasis added).

Accordingly, Ms. Enoch must show that CREDCO had "reasonable grounds" to believe that Dahle requested her credit report for an impermissible purpose. But she has provided no evidence that Dahle actually did request her credit data for an impermissible purpose, let alone that CREDCO had reasonable grounds to believe Dahle had an impermissible purpose. Rather, Ms. Enoch intended to obtain credit to purchase her vehicle, and she expected Dahle to finance the purchase or find a creditor that would. As the Ninth Circuit explained, a "consumer who

chooses to initiate a credit transaction implicitly consents to the release of his credit report for related purposes." Id. at *3.

Because Ms. Enoch has provided no basis for the court to find that CREDCO should have known that Dahle requested her credit report to use for an impermissible purpose, the DealerTrack Access Agreement adequately protected Ms. Enoch's privacy and satisfied CREDCO's obligations under FCRA.

**Order**

The court GRANTS the Motion for Summary Judgment filed by CitiFinancial (dkt. #69), GRANTS the Motion for Summary Judgment filed by Household (dkt. #74), and GRANTS the Motion for Summary Judgment filed by CREDCO (dkt. #92). The court DENIES Ms. Enoch Motion for Summary Judgment Against CitiFinancial (dkt. #99), and DENIES Ms. Enoch's Motion for Summary Judgment Against CREDCO (dkt. #146).

The court summarily dismisses Defendants CitiFinancial, Household and CREDCO.

SO ORDERED this 16th day of November, 2007.

BY THE COURT:

Tena Campbell

TENA CAMPBELL
Chief Judge